IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case Number |
| | § | 15-32481 |
| **HUGH SHANNONHOUSE,** | § | (Chapter 11) |
| Debtor | § | |

## AMENDED PLAN OF REORGANIZATION
## AND DISCLOSURE STATEMENT
### January 6, 2016

Hugh Shannonhouse Debtor, files this Amended Plan of Reorganization and Disclosure Statement. Mr. Shannonhouse is seeking to repay debts over time pursuant to the terms of his Plan of Reorganization. As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

The Court has not yet confirmed the Plan. In other words, the terms of the Plan are not yet binding on anyone. If the Court later confirms the Plan, then the Plan will be binding on Mr. Shannonhouse and on all creditors and interest holders in this case.

The Debtor represents that everything in this document is true to the best of his knowledge. **READ THIS DOCUMENT CAREFULLY IF YOU WANT TO KNOW:**

- Who can vote or object.

- The treatment of your claim is (*i.e.*, what your claim will receive if the plan is confirmed).

- The history of the debtor and significant events during the bankruptcy.

- How the court will decide whether to confirm the plan.

- The effect of plan confirmation.

- Whether this plan is feasible.

### 1. Background

The Debtor filed a voluntary petition on May 4, 2015 that commenced this chapter 11 bankruptcy case. The filing of the petition constituted an order for bankruptcy relief under § 301 of the Bankruptcy Code. Upon the filing of the case, an automatic stay was imposed pursuant to § 362(a) of the Bankruptcy Code. The automatic stay prohibits most collection activities against the Debtor and his property. There are certain exceptions set forth in § 362(b) of the Bankruptcy Code.

Debtor's Chapter 11 meeting of creditors under § 341(a) of the Bankruptcy Code was held on June 9, 2015, at 11:00am.

When the Debtor filed this bankruptcy case, all of his property became property of the bankruptcy estate. The Debtor was allowed to claim that certain property should be treated as exempt property and excluded from the bankruptcy estate. On May 18, 2015 the Debtor filed his list of claimed exempt property. Federal Rule of Bankruptcy Procedure 4003(b) requires that all objections to the claimed exemptions be filed not later than 30 days after the conclusion of the § 341 meeting of creditors.

There are no associated bankruptcy cases.

## 2.  Description of Assets

The Debtor filed amended schedules of all of his assets and liabilities on May 27, 2015. Complete copies of the schedules are available from the Clerk of the Court. The primary assets of the bankruptcy estate, their estimated values and associated liens are:

**Real Property:**

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate | Basis of Estimate of Value |
|---|---|---|---|---|---|
| 2702 Andrew Springs Ln. Spring, Texas 77386 | $284,000.00 | $275,000.00 | | $ 0.00 After sales costs | Debtor's estimate |
| 2702 Andrew Springs Ln. Spring, Texas 77386 | $284,000.00 | 37,300.83 | | $ 0.00 After sales costs | Debtor's estimate |
| 2706 Andrew Springs Ln. Spring, Texas 77386 | $325,040.00 | $322,000.00 | | $ 0.00 After sales costs | Debtor's estimate |
| 3930 Feagan Houston, Texas 77007 | $461,438.00 | $399,058.00 | | $30,000.00 After sales costs | Debtor's estimate |

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate | Basis of Estimate of Value |
|---|---|---|---|---|---|
| 3932 Feagan Houston, Texas 77007 | $436,389.00 | $409,006.00 | | $ 20,000.00 After sales costs | Debtor's estimate |
| | TOTAL | $1,442,364.83 | | $ 50,000.00 | |

**Debtors Personal Property:**

| Type of Property | Description and Location of Property | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|
| Checking Accounts, CD's, etc. | Amegy Bank checking acct # ******1953 | $700.00 |
| Security Deposits | Entergy Deposit | $610.00 |
| Household goods and furnishings, including audio, video, and computer equipment. | | |
| | 2 Televisions | $500.00 |
| | Entertainment Center | $200.00 |
| | Stereo Receiver | $150.00 |
| | DVD Player | $60.00 |
| | 2 VCR | $60.00 |
| | 3 Speakers | $120.00 |
| | Recliner | $200.00 |
| | 3 Coffee Tables | $200.00 |
| | 2 End Tables | $50.00 |
| | 7 Lamps | $140.00 |
| | Computer Equipment | $150.00 |
| | 2 Dinner Tables | $400.00 |
| | 12 Dining Chairs | $240.00 |
| | Refrigerator | $500.00 |
| | 2 Dressers | $250.00 |
| | 5 Nightstands | $250.00 |
| | 3 Mirrors | $200.00 |
| | Bed | $150.00 |

| | | |
|---|---|---:|
| | Printer | $100.00 |
| | Stove/Oven | $200.00 |
| | Bathroom Items | $100.00 |
| | Kitchen Items | $100.00 |
| Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | | |
| | 150 Books | $300.00 |
| | 15 Pictures | $300.00 |
| | 2 Antique Bed and 1 Antique Dresser | $1,500.00 |
| Wearing Apparel. | | |
| | 90 Items of Clothing | $450.00 |
| | 5 Shoes | $100.00 |
| Firearm | Rifle | $150.00 |
| IRA's and other pension plans | | |
| | Phibro Animal Health | ($465.00 per month) |
| | CEMEX | ($7000.00 per month) |
| Interests in partnerships, joint ventures | Preva Health, LLC 90% Interest | $0.00 |
| Automobiles, trucks, trailers, and other vehicles and Accessories | | |
| | 2007 Chevy Tahoe | $6,675.00 |
| | 2013 Buick Verano | $13,050.00 |
| | **Total** | **$28,155.00** |

The Debtor has no pending litigation.

There are no lawsuits to recover fraudulent transfers.

There are no lawsuits to recover any preferences.

There are no lawsuits arising under any provision of the Bankruptcy Code.

There are no lawsuits under non-bankruptcy law.

### 3. Events Leading Up to Bankruptcy

Debtor was laid off from job in February of 2014 and has been unable to find equivalent employment. The Debtor filed bankruptcy on May 4, 2015, after his mortgage company threatened foreclosure of his home mortgage.

### 4. Sources of Income

The Debtor uses the cash method of accounting. In the last three years, the Debtor's primary source of income has been:

Income from Employment

| Year | Employer | Amount of Income |
|---|---|---|
| 2015 | Rental Income | $38,000.00 |
| 2014 | Houston Spine and Rehabilitation and Rental Income | $172,000.00 |
| 2013 | Houston Spine and Rehabilitation and Rental Income | $418,000.00 |

### 5. Description of Reorganization

Since filing his Petition the Debtor has increased his monthly income and proposes to reorganize as follows:

      a) The Debtor has fully rented his vacant real property.
      b) The Debtor is now of sufficient age to begin monthly withdrawals from his retirement accounts.
      c) The Debtor has begun to rebuild his business.

In light of the foregoing, the Debtor has sufficient income to meet his monthly obligations and extinguish any arrears thru installment payments over the life of the Plan.

### 6. Classification and Treatment of Claims

### Class 1 Allowed Administrative Claims

Administrative claims are the claims allowed under § 503(b) of the Bankruptcy Code for administration of this bankruptcy case. These claims will be paid in cash on the Effective Date of the plan, unless a written agreement to the contrary is made with the holder of any such allowed claim.

The Court must approve all professional fees listed in this table. Professionals must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under this plan.

The following are the estimated administrative claims:

These claims shall be paid in cash and in full on the Effective Date, the date on which such claim becomes an Allowed Claim or on such later date as the Debtor and the Holder of any Administrative Claims shall agree.

A. The U.S. Trustee fees will be paid as a Class 1 administrative claim if any are owed on the Effective Date. The Debtor shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6). Any fees due as of the date of confirmation of the plan will be paid in full on the effective date of the plan. After confirmation, the Debtor shall pay United States Trustee quarterly fees as they accrue until this case is closed by the Court. The Debtor shall file with the Court and serve on the United States Trustee a quarterly report for each quarter that the case remains open.

B. Additionally, the Debtor's attorney's fees will be paid after approval of the Court. It is estimated that the Debtor's attorney's fees will be less than $10,000.00.

### Class 2 Allowed Secured Claims

The following is the classification and treatment of the Debtor's Class 2 claims under this plan. Class 2 consists of claims secured by the Debtor's property and are treated as indicated below:

**Class 2 Claims:** Class 2 consists of the secured claims of mortgage holders represented by promissory notes secured by Deed of Trust granting the holder's obligation liens on the respective real property listed below:

**Class 2 claim of Bank of America, N.A.:** Class 2 consists of the secured claim of Bank of America, N.A. ("BofA"), represented by a promissory note dated July 13, 2007 in the original principal amount of $294,392.00 (the "Note"), secured by a Deed of Trust executed on even date therewith, granting the holder of the aforementioned obligation a lien on the real property

commonly known as 2702 Andrew Springs Ln, Spring, Texas 77386 (hereinafter "2702 Andrew Springs"). This Claim has been service transferred to Shellpoint Mortgage Servicing (Shellpoint).

Post-Petition Mortgage Payments. Per the proof of claim filed by BofA, the monthly mortgage payment as of the date of the filing of this bankruptcy was $2,167.44 per month. Said mortgage payment is subject to future changes pursuant to the terms of the Deed of Trust and Note. Debtor shall resume making monthly mortgage payments to Shellpont as required by the terms of the Note and Deed of Trust in the amount of $2,167.44 commencing on the 1st day of November 2015, and continuing on the first day of each succeeding month thereafter.

Pre-Petition Arrears: Debtors shall pay Shellpoint the allowed amount of Shellpoint's pre-petition mortgage arrears totaling $24,450.62 in sixty (60) equal monthly payments of $407.51, with the first such payment due on the 15th day of the calendar month following the entry of the order confirming the Plan, and a like payment on the 15th day of each succeeding month until paid in full. In the event Debtor objects to such claim, Debtors shall continue to pay this monthly amount until a final order is entered by the court with respect to the allowed amount of this claim. If an order is entered by this court that modifies the allowed amount of this arrearage claim, the monthly payments shall be re-calculated at that time to conform to the terms of the court's order.

Post-Petition Arrears: As of October 31, 2015, Debtor estimates that post-petition arrearages have arisen on this claim in the amount of $8,669.76. The post-petition mortgage arrears have accrued from June 1, 2015 through the date that the mortgage payments resume under the terms of the Plan. Such amount is calculated by taking the number of unpaid monthly post-petition mortgage payments and multiplying that number times $2,167.44. Debtors shall pay Shellpoint the amount of Shellpoint's post-petition mortgage arrears in sixty (60) equal monthly payments of $144.50, with the first such payment due on the 15th day of the calendar month following the entry of the order confirming the Plan, and a like payment on the 15th day of each succeeding month until paid in full.

**Class 2 claim of Bank of America, N.A.:** Class 2 consists of the secured claim of Bank of America, N.A. ("BofA"), represented by a promissory note dated February 21, 2008 in the original principal amount of $406,692.00 ("Note 2"), secured by a Deed of Trust executed on even date therewith, granting the holder of the aforementioned obligation a lien on the real property commonly known as 3930 Feagan St., Houston, Texas (hereinafter "3930 Feagan").

Post-Petition Mortgage Payments. Per the proof of claim filed by BofA, the monthly mortgage payment as of the date of the filing of this bankruptcy was $2,978.01. Said mortgage payment is subject to future changes pursuant to the terms of the Deed of Trust and Note. Debtor shall resume making monthly mortgage payments to BofA as required by the terms of the Note and Deed of Trust in the amount of $2,978.01 commencing on the 1st day of November 2015, and continuing on the first day of each succeeding month thereafter.

Pre-Petition Arrears: Debtors shall pay BofA the allowed amount of BofA's pre-petition mortgage arrears totaling $33,711.22 in sixty (60) equal monthly payments of $561.85, with the first such payment due on the 15th day of the calendar month following the entry of the order confirming the Plan, and a like payment on the 15th day of each succeeding month until paid in full.

In the event Debtor objects to such claim, Debtors shall continue to pay this monthly amount until a final order is entered by the court with respect to the allowed amount of this claim. If an order is entered by this court that modifies the allowed amount of this arrearage claim, the monthly payments shall be re-calculated at that time to conform to the terms of the court's order.

Post-Petition Arrears: As of October 31, 2015, Debtor estimates that post-petition arrearages have arisen on this claim in the amount of $11,912.00. The post-petition mortgage arrears have accrued from June 1, 2015 through the date that the mortgage payments resume under the terms of the Plan. Such amount is calculated by taking the number of unpaid monthly post-petition mortgage payments and multiplying that number times $2,978.01. Debtors shall pay BofA the amount of BofA's post-petition mortgage arrears in sixty (60) equal monthly payments of $198.53, with the first such payment due on the 15th day of the calendar month following the entry of the order confirming the Plan, and a like payment on the 15th day of each succeeding month until paid in full.

**Class 2 claim of JPMorgan Chase Bank, N.A.:** Class 2 consists of the secured claim of JPMorgan Chase Bank, N.A. ("Chase"), represented by a promissory note dated July 13, 2008 in the original principal amount of $288,200.00 ("Note 3"), secured by a Deed of Trust executed on even date therewith, granting the holder of the aforementioned obligation a lien on the real property commonly known as 2706 Andrew Springs Ln, Spring, Texas (hereinafter "2706 Andrew Springs"). This loan was modified by agreement of the parties effective November 1, 2015 (the "Loan Modification"). The Loan Modification capitalized all pre-petiti0n and post-petition arrearages due on Note 3 through and including October 31, 2015.

Post-Petition Mortgage Payments. Per the Loan modification, the monthly mortgage payment effective November 1, 2015 was $2,355.16. Said mortgage payment is subject to future changes pursuant to the terms of the Deed of Trust and Note. Debtor shall resume making monthly mortgage payments to Chase as required by the terms of the Note and Deed of Trust, as modified by the Loan Modification, in the amount of $2,355.16 commencing on the 1st day of November 2015, and continuing on the first day of each succeeding month thereafter.

**Class 2 claim of JPMorgan Chase Bank, N.A.:** Class 2 consists of the secured claim of JPMorgan Chase Bank, N.A. ("Chase"), represented by a promissory note dated July 13, 2008 in the original principal amount of $35,910.00 ("Note 4"), secured by a Deed of Trust executed on even date therewith, granting the holder of the aforementioned obligation a lien on the real property commonly known as 2706 Andrew Springs Ln, Spring, Texas (hereinafter "2706 Andrew Springs"). This lien is a second lien on 2706 Andrew Springs.

Post-Petition Mortgage Payments. Per the proof of claim filed by Chase, the monthly mortgage payment as of the date of the filing of this bankruptcy was $326.28. Said mortgage payment is subject to future changes pursuant to the terms of the Deed of Trust and Note. Debtor shall resume making monthly mortgage payments to Chase as required by the terms of the Note and Deed of Trust in the amount of $326.28 commencing on the 1st day of November 2015, and continuing on the first day of each succeeding month thereafter.

Pre-Petition Arrears: Debtors shall pay Chase the allowed amount of Chase's pre-petition mortgage arrears totaling $3,347.85 in sixty (60) equal monthly payments of $55.80, with the first such payment due on the 15th day of the calendar month following the entry of the order confirming the Plan, and a like payment on the 15th day of each succeeding month until paid in full. In the event Debtor objects to such claim, Debtors shall continue to pay this monthly amount until a final order is entered by the court with respect to the allowed amount of this claim. If an order is entered by this court that modifies the allowed amount of this arrearage claim, the monthly payments shall be re-calculated at that time to conform to the terms of the court's order.

Post-Petition Arrears: As of October 31, 2015, Debtor estimates that post-petition arrearages have arisen on this claim in the amount of $1,631.40. The post-petition mortgage arrears have accrued from June 1, 2015 through the date that the mortgage payments resume under the terms of the Plan. Such amount is calculated by taking the number of unpaid monthly post-petition mortgage payments and multiplying that number times $326.28. Debtors shall pay Chase the amount of Chase's post-petition mortgage arrears in sixty (60) equal monthly payments of $27.19, with the first such payment due on the 15th day of the calendar month following the entry of the order confirming the Plan, and a like payment on the 15th day of each succeeding month until paid in full.

**Class 2 claim of Federal National Mortgage Association, by and through its servicing agent Seterus, Inc.:** Class 2 consists of the secured claim of Federal National Mortgage Association, by and through its servicing agent Seterus, Inc. ("Seterus"), represented by a promissory note dated January 4, 2008 in the original principal amount of $342,200.00 ("Note 5"), secured by a Deed of Trust executed on even date therewith, granting the holder of the aforementioned obligation a lien on the real property commonly known as 3932 Feagan, Houston, Texas (hereinafter "3932 Feagan").

Post-Petition Mortgage Payments. The Debtor estimates that the monthly mortgage payment as of the date of the filing of this bankruptcy was $3,080.13. Said mortgage payment is subject to future changes pursuant to the terms of the Deed of Trust and Note. Debtor shall resume making monthly mortgage payments to Seterus as required by the terms of the Note and Deed of Trust in the amount of $3,080.13 commencing on the 1st day of November 2015, and continuing on the first day of each succeeding month thereafter.

Pre-Petition Arrears: Debtor shall pay Seterus the estimated allowed amount of Seterus's pre-petition mortgage arrears totaling $20,242.27 in sixty (60) equal monthly payments of $337.38, with the first such payment due on the 15th day of the calendar month following the entry of the order confirming the Plan, and a like payment on the 15th day of each succeeding month until paid in full. In the event Debtor objects to such claim, Debtors shall continue to pay this monthly amount until a final order is entered by the court with respect to the allowed amount of this claim. If an order is entered by this court that modifies the allowed amount of this arrearage claim, the monthly payments shall be re-calculated at that time to conform to the terms of the court's order.

Post-Petition Arrears: As of October 31, 2015, Debtor estimates that post-petition arrearages have arisen on this claim in the amount of $6,160.26. The post-petition mortgage arrears have accrued from June 1, 2015 through the date that the mortgage payments resume under the

terms of the Plan. Such amount is calculated by taking the number of unpaid monthly post-petition mortgage payments and multiplying that number times $3,080.13. Debtor shall pay Seterus the amount of Seterus's post-petition mortgage arrears in sixty (60) equal monthly payments of $102.67, with the first such payment due on the 15th day of the calendar month following the entry of the order confirming the Plan, and a like payment on the 15th day of each succeeding month until paid in full.

Survival of Lien: Notwithstanding anything contained in this Plan to the contrary, the liens granted to the Class 2 creditors shall survive entry of the order of confirmation and the subsequent discharge entered by the court.

No further modification: Subject to the repayment terms set forth above, all other terms of the Note and Deed of Trust are not modified by this Plan and those terms shall survive confirmation of the Plan.

Default: In the event a Class 2 Creditor does not receive timely tender of the payments set forth above, the Class 2 Creditor shall send written notice by Regular Mail and by Certified Return Receipt Requested Mail, postage prepaid, to Debtors and Counsel for Debtor, and allow Debtor a 10-day period from the date of such written notice to cure such delinquent payments. Cure payments must be made by certified funds only. In the event Debtor fails to cure such delinquent payments within such 10-day period, that Class 2 Creditor shall be allowed to take any and all steps necessary to exercise any and all rights it may have pursuant to the Note and Deed of Trust or under the laws of the State of Texas in the Collateral described above. Upon conclusion of the sixty (60) month repayment term for the pre-petition arrearages set forth above, this notice requirement shall terminate and the parties shall thereafter be governed by the notice provisions set forth in the Note and Deed of Trust or under the laws of the State of Texas.

Specific Terms of Treatment. The specific terms of the treatment of this claim set forth above shall control over any general terms set forth in the Plan.

### Class 3 -Claim of Ad Valorem Tax Claimants

Class 3 consists of all allowed secured claims for unmatured ad valorem property taxes.

The Class 3 claims of Harris and Montgomery Counties will be paid in accord with the escrow agreement of each of the secured mortgages.

### Class 4- Secured Claims of Homeowner's Associations

Class 4 consists of the secured claims of Feagan Street Casitas and Spring Trails Community Association for the arrearage of home owner's fees. These claims shall be paid in equal monthly installments beginning 30 days after the Effective Date and continuing for 60 months, until paid in full.

| Class #4 | Secured Claimant | Property Address | Total Amount of Claim | Total Payable in Monthly Installments |
|---|---|---|---|---|
| | Feagan Street Casitas | 3930 Feagan St. Houston, Texas 77007 | $2,475.09 | $41.25 |
| | Feagan Street Casitas | 3932 Feagan St. Houston, Texas 77007 | $3,640.43 | $60.67 |
| | Spring Trails Community Association | 2702 Andrew Springs Lane, Spring, Texas 77386 | $2,439.60 | $40.66 |
| | Spring Trails Community Association | 2706 Andrew Springs Lane, Spring, Texas 77386 | $2,439.60 | $40.66 |
| | | | **Total monthly payment** | **$183.24** |

### Class 5 Priority Unsecured Domestic Claim

Class 5 consists of the priority unsecured claim of Rebecca L. Shannonhouse for a Domestic Support Order. The claim is in the amount of $10,450.00 and shall be paid in 24 equal monthly installments. The Debtor shall begin making the monthly payments of $435.42 each month beginning 30 days after the Effective Date and continuing until month 24 of the Plan, until paid in full.

### Class 6 General Unsecured Claims

Class 6 consists of the General Unsecured Claims of the Debtor. The Holders of Class 6 Claims shall be paid 100% of their claims. The Debtor shall open an Unsecured Creditors Escrow Account and place $1,820.00 in this account each month beginning 30 days after the Effective Date and continuing for 60 months or until operations of the Debtor cease or the case is converted to a case under Chapter 7. This fund shall be disbursed on a pro rata basis quarterly to all allowed Class 6 claimants beginning on the 15th day after the end of the first full quarter after the Confirmation Date.

| Class #6 | General Unsecured Claims | | Total amount of claim |
|---|---|---|---|
| | Advanta Credit Cards | Impaired | $2,386.00 |
| | Bank Americard | Impaired | $13,311.69 |
| | Baylor College of Medicine | Impaired | $1,720.00 |
| | Capital One Bank (WSA) N.A. | Impaired | $888.00 |
| | Chase | Impaired | $13,907.62 |
| | Chase | Impaired | $541.76 |

| | | |
|---|---|---|
| Clinical Pathology Labs, Inc. | Impaired | $735.75 |
| College Park Mini Storage | Impaired | $1,211.00 |
| Convergent Outsourcing | Impaired | $178.00 |
| Dillards / Wells Fargo Bank, NA | Impaired | $1,298.36 |
| Gulf Utility Service, Inc. | Impaired | $364.42 |
| Medicredit Corporation | Impaired | $121.60 |
| Rayford Road MUD | Impaired | $98.10 |
| Seyfarth-Shaw LLP | Impaired | $55,851.00 |
| Synchrony Bank/JCP | Impaired | $255.43 |
| Wells Fargo Bank N.A | Impaired | $1,298.36 |
| <u>Ally Financial</u> | Impaired | <u>$14,950.98</u> |
| **Total Class 6 Claims** | | <u>**$109,118.07**</u> |

**Voting and Impairment**

Only holders of claims that are "impaired" have the right to vote to accept or reject the plan. If a claim is not marked as impaired, it will be paid in accordance with the pre-petition contract that governs the claim. If there is a discrepancy between the payments reflected in the above chart and the pre-petition contract, the pre-petition contract will control.

The forecast claims in this class are the amount of claims that the Debtor believes will ultimately be allowed by the Court. The following claims either have been made or are expected to be made and are disputed: None
The Debtor is not aware of any present disputes over any other claim. Unless otherwise specified in the following paragraph, payments shall be made monthly, on the first day of each month.

## 7. Forecasts

Based on the preceding forecasts of income and expenses and on the provisions of the plan, the Debtor provides these forecasts of his cash flow:

**12 MONTH PROJECTION**

| | 15-Oct | Nov – 15 | Dec – 15 | Jan – 16 | Feb – 16 | Mar – 16 | Apr – 16 | 16-May | 16-Jun | 16-Jul | 16-Aug | 16-Sep |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | |
| Rental | $9,880.00 | $9,880.00 | $9,880.00 | $9,880.00 | $9,880.00 | $9,880.00 | $9,880.00 | $9,880.00 | $9,880.00 | $9,880.00 | $9,880.00 | $9,880.00 |
| IRA | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 | $7,000.00 |
| Pension | $465.00 | $465.00 | $465.00 | $465.00 | $465.00 | $465.00 | $465.00 | $465.00 | $465.00 | $465.00 | $465.00 | $465.00 |
| Business | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 |
| **TOTAL INCOME** | $19,845.00 | $19,845.00 | $19,845.00 | $19,845.00 | $19,845.00 | $19,845.00 | $19,845.00 | $19,845.00 | $19,845.00 | $19,845.00 | $19,845.00 | $19,845.00 |
| **EXPENSES** | | | | | | | | | | | | |
| Electricity, heat, natural gas | $155.00 | $155.00 | $155.00 | $155.00 | $155.00 | $155.00 | $155.00 | $155.00 | $155.00 | $155.00 | $155.00 | $155.00 |
| Water, sewer, garbage collection | $37.00 | $37.00 | $37.00 | $37.00 | $37.00 | $37.00 | $37.00 | $37.00 | $37.00 | $37.00 | $37.00 | $37.00 |
| Telephone, Internet, satellite, and cable services | $235.00 | $235.00 | $235.00 | $235.00 | $235.00 | $235.00 | $235.00 | $235.00 | $235.00 | $235.00 | $235.00 | $235.00 |
| Mobile Phone | $120.00 | $120.00 | $120.00 | $120.00 | $120.00 | $120.00 | $120.00 | $120.00 | $120.00 | $120.00 | $120.00 | $120.00 |
| Food | $620.00 | $620.00 | $620.00 | $620.00 | $620.00 | $620.00 | $620.00 | $620.00 | $620.00 | $620.00 | $620.00 | $620.00 |
| Clothing, laundry, and dry cleaning | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 |
| Medical/Dental | $140.00 | $140.00 | $140.00 | $140.00 | $140.00 | $140.00 | $140.00 | $140.00 | $140.00 | $140.00 | $140.00 | $140.00 |
| Transportation/Gas | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 |
| Entertainment | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 |
| Charitable Contributions | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Vehicle Insurance | $230.00 | $230.00 | $230.00 | $230.00 | $230.00 | $230.00 | $230.00 | $230.00 | $230.00 | $230.00 | $230.00 | $230.00 |
| Life and Health Insurance | $78.00 | $78.00 | $78.00 | $78.00 | $78.00 | $78.00 | $78.00 | $78.00 | $78.00 | $78.00 | $78.00 | $78.00 |
| Automobile | $653.65 | $653.65 | $653.65 | $653.65 | $653.65 | $653.65 | $653.65 | $653.65 | $653.65 | $653.65 | $653.65 | $653.65 |
| Alimony | $950.00 | $950.00 | $950.00 | $950.00 | $950.00 | $950.00 | $950.00 | $950.00 | $950.00 | $950.00 | $950.00 | $950.00 |
| Property Maintenance | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Home Owner's Assc. | $240.00 | $240.00 | $240.00 | $240.00 | $240.00 | $240.00 | $240.00 | $240.00 | $240.00 | $240.00 | $240.00 | $240.00 |
| **Mortgage Payment** | **$2,374.00** | **$2,374.00** | **$2,374.00** | **$2,374.00** | **$2,374.00** | **$2,374.00** | **$2,374.00** | **$2,374.00** | **$2,374.00** | **$2,374.00** | **$2,374.00** | **$2,374.00** |
| **Total Expenses** | **$6,907.65** | **$6,907.65** | **$6,907.65** | **$6,907.65** | **$6,907.65** | **$6,907.65** | **$6,907.65** | **$6,907.65** | **$6,907.65** | **$6,907.65** | **$6,907.65** | **$6,907.65** |
| **Total Remaining for Plan** | **$12,937.35** | **$12,937.35** | **$12,937.35** | **$12,937.35** | **$12,937.35** | **$12,937.35** | **$12,937.35** | **$12,937.35** | **$12,937.35** | **$12,937.35** | **$12,937.35** | **$12,937.35** |

Monthly reports will be filed showing actual income and expenses during the period of the bankruptcy case.

### 8. Disposable Income Test

If an unsecured creditor objects to confirmation, the plan can be confirmed only if it provides for a 100% distribution to creditors; or a distribution to creditors that is of a value of not less than the debtor's projected disposable income to be received during the longer of (i) the 5-year period beginning on the date that the first payment is due under the plan; or (ii) the term of the plan. Disposable income is the difference between income and necessary expenses.

Notwithstanding any provision in this plan to the contrary, the Debtor commits to make payments of a value not less than required by the preceding paragraph.

### 9. Cramdown and Absolute Priority Rule

If a class of creditors does not accept the plan, the Debtor will seek to obtain confirmation through the cramdown provisions of § 1129(b). This means that the plan must be fair and equitable to the class that does not accept the plan. The definition of whether the plan is fair and equitable may be found in § 1129(b) of the Bankruptcy Code.

If a class of unsecured claims does not accept this plan, the Debtor will (mark all that apply):

> i. Increase the distribution to the holders of unsecured claims such that each holder is paid in full.
>
> ii. If a class of unsecured claims does not accept this plan, the Debtor will demonstrate that the plan is fair and equitable pursuant to 1129(b).

### 10. Liquidation Analysis

Section 1129(a)(7)(A) of the Bankruptcy Code requires that each holder of a claim must either accept the plan or receive payments or property with a value of at least as much as would be available in a chapter 7 liquidation of the Debtor's assets.

As set forth above, each holder of a secured claim is either receiving its collateral or is being paid the value of its claim, with interest. This treatment satisfies the liquidation test under § 1129(a)(7)(A). Holders of priority claims are paid in full. This also satisfies the requirements of § 1129(a)(7).

Holders of general unsecured claims are forecast to receive a dividend of 100% of their allowed claim. The Debtor has estimated that his assets, after payment of liens would generate the following amounts in chapter 7 liquidation:

| Description of Asset | Estimated Liquidation Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate in Liquidation | Basis of Estimate of Value |
|---|---|---|---|---|---|
| 2702 Andrew Springs Ln. Spring, Texas 77386 | $284,000.00 | $275,000.00 | 0.00 | $ 0.00 After cost of sale | Debtor's estimate |
| 2706 Andrew Springs Ln. Spring, Texas 77386 | $325,040.00 | $322,000.00 | 0.00 | $ 0.00 After cost of sale | Debtor's estimate |
| 3930 Feagan Houston, Texas 77007 | $461,438.00 | $399,058.00 | 0.00 | $20,000.00 After cost of sale | Debtor's estimate |
| 3932 Feagan Houston, Texas 77007 | $463,389.00 | $409,006.00 | 0.00 | $30,000.00 After cost of sale | Debtor's estimate |
|  | TOTAL | $1,405,064.00 |  | $50,000.00 |  |

In a chapter 7 liquidation, the estimated liquidation value of $ would be applied to the chapter 7 Trustee's fees and expenses and then to priority claims. This would produce the following:

| Liquidation Value | $ |
|---|---|
| Estimated Trustee's Fees and expenses | Approximately $10,000.00 |
| Estimated priority claims | $20,000.00 |
| Total available for holders of unsecured claims | $20,000.00 |
| Estimated unsecured claims | **$94,167.09** |
| Estimated percentage recovery in liquidation | 20% |

Because the plan forecasts to pay holders of unsecured claims 100% of the amount of their claims and chapter 7 liquidation is forecast to pay 20%, this plan satisfies the liquidation test as to holders of unsecured claims.

## 11. Prepayment

Any claim may be prepaid at any time, without penalty. Interest as provided in this plan must be paid through the date of prepayment.

## 12. Tax Issues

The federal income tax effects on holders of claims will vary depending on how the holder has treated its claim for tax purposes. For example, if the holder has a basis in its debt claim and is paid an amount less than its basis, the holder may be entitled to a federal income tax deduction for its loss. This will depend on the holder's own tax characteristics and cannot be assured. Conversely, if the holder has no basis in its debt claim, the holder may recognize income for federal income tax purposes based on payments under the plan.

Because each holder's federal income tax situation may vary, you are urged to consult your own tax advisors to determine the federal income tax effect of the plan on you.

The Debtor may also have a federal income tax effect from the plan. To the extent that indebtedness is discharged, the Debtor may have a basis adjustment in her assets. Moreover, any sale of assets may produce taxable income. The forecasts set forth above incorporate the Debtor's best estimate of the federal income tax effect of the plan.

## 13. Executory Contracts and Leases

Debtor has no Executory Contracts.

## 14. Claims Objections

Claims objections must be filed not later than 30 days after entry of the order confirming the plan. This deadline may be extended by the Court, on motion by a party in interest. Any such motion must be filed not later than 30 days after entry of the order confirming the plan.

## 15. Discharge, Vesting and Effective Date

Upon completion of all payments, the Debtor must file a motion for discharge, served on all holders of allowed claims, in which they will certify that (i) they meet the standards set forth in § 1141(d)(5)(C) of the Bankruptcy Code; and (ii) have completed all payments under the plan. Unless a party objects and the Court sustains the objection to the motion for discharge, the Debtor will be discharged of their liability on debts to the maximum extent allowed by § 1142 of the Bankruptcy Code.

On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in Reorganized Debtor, free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement, on the condition that Reorganized Debtor complies with the terms of the Plan, including the making of all payments to creditors provided for in such Plan. If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

This Effective Date of this plan is the 30th day after entry of the order confirming the plan, unless the confirmation order is stayed. If the confirmation order is stayed, the Effective Date shall be the 15th day following the termination of the stay. No party may act pursuant to this plan prior to the Effective Date.

### 16. Obligations to United States Trustee

The Debtor will be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6). Any fees due as of the date of confirmation will be paid on the Effective Date. After confirmation, the Debtor will continue to file timely financial reports in the format required by the United States Trustee and continue to pay quarterly fees as accrued until the case is closed, converted to a case under chapter 7, or dismissed.

After the Effective Date, but prior to the completion of all Plan Payments, the individual debtor may seek to administratively close this case. If the case is closed prior to the completion of the Plan Payments, the debtor may later seek to reopen the case for the purpose of filing a motion for discharge.

### 17. Default

Unless otherwise provided for herein, if there is a default in payment to a creditor under this plan, the default must be cured within 21 days of written notice sent by the affected creditor. If the default is not cured within the 21-day period, the creditor may seek any rights available under the Bankruptcy Code or under applicable non-bankruptcy law.

### 18. Conclusion

Hugh Shannonhouse has filed this amended plan and disclosure statement. They represent that he believes the information contained in this document to be true and correct in all respects.

Dated: <u>January 6, 2016</u>

                                            */s/Hugh Shannonhouse*
                                            Hugh Shannonhouse

Submitted through his counsel:

*/s/ Nelson M. Jones III*
Nelson M. Jones III
TBN: 10973400
440 Louisiana Street, Suite 1575
Houston, Texas 77002
Phone: 713-236-8736
Fax: 713-236-8990
njoneslawfirm@aol.com